IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ATON CENTER, INC.          :

                           :

        v.                 :  Civil Action No. DKC 20-3170

                           :

CAREFIRST OF MARYLAND, INC.,
et al.                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution is Defendants'
motion to dismiss Plaintiff's complaint asserting contractual,
quasi-contractual, and tort claims, in this complaint over the
"rate of payment."[1] (ECF No. 13).  The issues have been briefed,

---

[1] As explained in *Premier Inpatient Partners LLC v. Aetna
Health & Life Ins. Co.*, 371 F.Supp.3d 1056, 1066 (M.D.Fla. 2019):

> "Rate of payment claims tend to arise when the
> third-party provider has a separate agreement, whether
> written or oral, with the insurance company regarding
> their fee arrangements and the provider is disputing the
> rate at which it was paid for providing covered services
> to the insured." *Reva, Inc. v. United Healthcare Ins.
> Co.*, Civil Action No. 17-24210-Civ, 2018 U.S. Dist.
> LEXIS 112955, at *7 (S.D. Fla. June 11, 2018) (citing
> *Conn. State Dental Ass'n*, 591 F.3d at 1342); see also
> *Jacobs v. Health*, No. 14-cv-24725, 2015 WL 12699875, at
> *1 (S.D.Fla. March 12, 2015) (Ungaro, J.).  "On the other
> hand, a 'right to payment claim challenges the insurer's
> denial of payment, which is based on a coverage
> determination under an ERISA plan.'" *United Healthcare
> Ins. Co.*, 2018 U.S. Dist. LEXIS 112955 at *7 (quoting
> *Emergency Servs. of Zephyrhills, P.A. v. Coventry Health
> Care of Fla., Inc.*, 281 F.Supp.3d 1339, 1345 (S.D.Fla.
> 2017)).  "The distinction between rate of payment and
> right to payment, therefore, is whether the claims are
> payable at all." *Id.* (quoting *Gables Ins. Recovery v.*

and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted, but Plaintiff will be granted leave to amend some of the claims.

## I.   Background

Unless otherwise noted, the facts outlined here are set forth in the complaint and construed in the light most favorable to Plaintiff.  Plaintiff Aton Center, Inc. ("Aton") is a corporation organized under the laws of California and with its principal place of business there, in the City of Encinitas.  Aton runs an inpatient residential substance abuse treatment facility.  It provided residential treatment care services to patients it believes were covered by the health insurance policies that are provided, sponsored, supplied, underwritten, administered and/or implemented by Defendants CareFirst of Maryland, Inc., Group Hospital and Medical Services, Inc., d/b/a/ CareFirst BlueCross BlueShield, and CareFirst BlueChoice, Inc. (collectively "Defendants," but both parties refer to them as a single entity, "CareFirst," at times).  Plaintiff alleges that all three entities

_United Healthcare Ins. Co.,_ 39 F.Supp.3d 1377, 1384 (S.D.Fla. 2013)).

are Maryland corporations that do business in "Maryland, Virginia[,] Washington D.C. and nationally."[2]

Plaintiff's claims arise out of the Anthem Blue Card program which allows members to obtain out-of-state healthcare treatment. As part of this program, Plaintiff was directed to verify benefits directly with Defendants. Because Aton was an out-of-network provider for the patients who carried this form of CareFirst insurance, Aton was "careful not to only verify insurance coverage, but also the payment rate." It took "reasonable steps" to verify all this prior to admitting the patients in question, "including calling Defendants at the phone number [they] provided . . . and [being] advised in these verification of benefit (VOB) calls that the policies provided for and Defendants would pay for inpatient treatment, based on the usual, customary and reasonable rate (UCR)."[3]

The UCR, Plaintiff maintains, is a "certain and well-known term of art, and methodology for determining a payment rate[] in the health care industry." It argues that it only provided

---

[2] Defendants have not filed Local Rule 103.3 disclosures to verify the law under which each is organized or where each has its principal place of business. They do not dispute that diversity jurisdiction exists, however.

[3] Plaintiff does not, apparently, sue as an assignee of the patients' rights. The terms of the underlying insurance policies are nowhere provided, nor do the parties discuss how the terms of the coverage in those contracts might affect the issues here.

treatment to patients and submitted claims for payment under the Blue Card program based upon "reasonable reliance" on Defendants' "representations that the payment would be based on the UCR prior payment history, authorization and agreement of the Defendants." It specifically includes the "reference numbers" for "seven patients with claims at issue in this action." (*See* ECF No. 1, at 5). The UCR provided for reimbursement of "44.38% of the billed amounts based on a formula all parties knew applied to the Blue Card claims." By verifying the UCR would be honored and applied to these claims, therefore, Plaintiff argues that it and Defendants had a "meeting of the minds" that this would be the applicable rate paid on all claims under this plan.

Plaintiff alleges that, "[w]ithin the past two years, the Defendants breached their agreement with Plaintiff and/or committed other wrongful acts and omission by refusing to pay Plaintiff the represented and agreed upon[] amount, but rather paid different and significantly lower (and inconsistent) amounts for treatment." Ultimately this resulted in an alleged $238,309.12 of unpaid balance that Plaintiff claims is owed to it by Defendants. It contends that Defendants "had information" regarding these intended, lesser payments at the time of the VOB calls but purposefully withheld that information from Plaintiff. As a result, Plaintiff complains Defendants have caused it "substantial hardship" and that "unconscionable injury" would

result if Defendants were not required to pay as per the "payment rate based on the UCR and payment history."

Plaintiff's complaint contains nine separate claims: I) Breach of Contract – Oral Agreement; II) Breach of Contract – Implied Contract; III) Promissory Estoppel; IV) *Quantum Meruit*, V) Intentional Misrepresentation – (Fraudulent Inducement)), VI) Negligent Misrepresentation; VII) Fraudulent Concealment, VIII) Violation of Unfair Competition Law; and "VIIII" [sic]) Account Stated.

## II. Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 305 (4th Cir. 2020) (reversing a district court's dismissal of a complaint because "we must accept the well-pleaded facts and draw reasonable inferences in favor of the plaintiff"). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters of Norfolk*

5

*v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. Choice of Law

While it may not ultimately matter, the law applicable to each of Plaintiff's claims is difficult, or impossible, to determine from the facts alleged in the complaint. "[F]or contract claims, Maryland applies the law of the state in which the contract was formed ('*lex loci contractus*'), unless the parties to the contract agreed to be bound by the law of another state." *State Auto. Mut. Ins. Comp. v. Lennox*, 422 F.Supp.3d 948, 961 (D.Md. 2019) (citing, among others, *Cunningham v. Feinberg*, 441 Md. 310, 326 (2015)). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Id.* (citing *Konover Prop. Tr., Inc. v. WHE Assocs.*, 142 Md.App. 476, 490 (2002)). The complaint seems to assert that contract was made in Encinitas, California, Plaintiff's place of business.

Defendants argue, however, that the Complaint does not allege facts sufficient to establish where the "last act" to create a binding contract occurred. (ECF No. 13-1, at 3-4).  They surmise that Plaintiff's agents were in California for the VOB phone calls but the Complaint is silent about where the CareFirst agents were located, despite generally highlighting Defendants' collective operations in the mid-Atlantic and nationally.  Even if one could pinpoint where the parties were at the time of these calls, the complaint does not establish the chronology of any offer or acceptance.  Given this ambiguity, Defendants treat the contract claims under both Maryland *and* California law.  (ECF No. 13-1, at 4 & n.1) (citing *Fid. & Guar. Life Ins. Co. v. United Advisory Grp., Inc.*, No. 13-cv-0040-WDQ, 2014 WL 346630, at *4 (D.Md. Jan. 29, 2014)) (finding that the "choice-of-law analysis" may be "deferred" until after discovery given that it is "fact-intensive" and "context specific").

Alternatively, Plaintiff points to *Loew v. DAI Glob., LLC*, at *4 (D.Md. Sept. 8, 2020), to stand for the proposition that where the last act is "difficult to ascertain," Maryland courts have instead looked to the Second Restatement of Conflict of Laws, which counsels here that California law should apply given the state's "significant relationship to the transaction and parties."  (ECF

No. 14, at 4).[4]  *Loew*, however, merely explained that *some* Maryland courts have rejected application of *lex loci contractus* to "true" quasi-contractual claims where the existence of an express contract is disputed or there is no contract at all.[5]  Moreover, it is the impossibility of ascertaining a last act in such a scenario, not the ambiguity of the pleading, that *arguably* renders the doctrine inapplicable.  (ECF No. 17, at 2 n.1).

Allowing the imprecision of Plaintiff's description of the contract's formation to guide the choice-of-law analysis would be improper.  Moreover, the more current trend, of the two presented in *Loew*, is to apply *lex loci contractus* to contract and quasi-contract claims alike.  *See RaceRedi Motorsports, LLC v. Dart Machinery, Ltd.*, 640 F.2upp2d 660, 665-666 (D.Md. 2009) (citing *Konover Prop. Tr. Inc. v. WHE Assocs., Inc.*, 142 Md.App. 476 (Md. 2002)) ("Following the only decision from a Maryland state court on this issue and the weight of authority from other jurisdictions, the Court will apply the rule of *lex loci contractus* to the unjust

---

[4] While Plaintiff discusses its breach of contract claims only under California law in its opposition, it proceeds to discuss its *quantum meruit* claim under both Maryland and California law.  (ECF No. 14, at 6-7).

[5] As will be explained more fully below, a *quantum meruit* theory of recovery on a contract implied-in-fact under Maryland law is considered to be a full contractual claim, unlike a similar theory applied to an implied-in-law contract, where no actual contract is said to be formed.  *See Alts. Unlimited, Inc. v. New Balt. City Bd. Of Sch. Comm'rs*, 155 Md.App. 415, 478 (2004) (*quoting Mogavero v. Silverstein*, 142 Md.App. 259, 277 (2002)).

enrichment claim.").  The location of the last act in forming the purported contract controls the choice-of-law question for Counts I-IV, a fact which remains unknown.

Defendants clarify in reply that when *Fid & Guar. Life Ins.* "deferred" the choice-of-law question, it called for application of the law of the forum state until the last act ambiguity was resolved, as a default rule.  (ECF No. 17, at 2).  Indeed, *Fid & Guar. Life Ins.* did so, but explained that this was because both parties had generally applied Maryland caselaw in their briefs, and because the defendants had failed to cite *any* Illinois caselaw, despite a defendant's singular contention, in a footnote, that the complaint failed under either law.  2014 WL 346630, at *4

Nonetheless, there is support in the caselaw for defaulting to the law of the forum state where the last act is not properly plead *or* impossible to determine.  *See, e.g.*, *Day v. DB Cap. Grp., LLC*, 2011 WL 887554, No. DKC 10-1658, at *15 n.11 (D.Md. Mar. 11, 2011) (finding it unclear from the complaint where one party signed the contract or whether it had a choice-of-law provision, thus assuming Maryland law governed "for the time being" because both parties referenced it in their motions); *c.f. HBCU Pro Football, LLC v. New Visions Sports Props., LLC.*, No. WDQ-10-0467, 2011 WL 2038512, *4 (D.Md. May 24, 2011) (noting that plaintiff had conceded it was "unclear where the 'last act necessary' to create the oral contract took place" given that agreement arose on a phone

call between either Florida or California and Maryland, but granting a motion for default judgment under any of their laws because these "states do not differ materially in their general requirements for establishing liability for breach of contract.").

Moreover, here, as in *HBCU Pro Football*, there seems to be little difference between the laws of California and Maryland as to these claims. Despite analyzing the contract claims under both laws, Defendants comment "California law is in accord with Maryland." They also compare the similarities between a quasi-contractual claim under California and Maryland law, while noting the only difference is that "California courts articulate the requisite elements slightly differently." (ECF No. 13-1, at 8-9).[6]

Given the fact that each claim incorporates the other allegations, there is support for the fact that the *quantum meruit* claim is founded on the earlier, alleged implied-in-fact contract,

---

[6] On this point, Defendants convolute the relevant comparison. They explain that *quantum meruit* has been used in Maryland to describe contracts implied-in-fact and by law — where the latter does not involve a meeting of the minds at all. The former theory, Defendants argue, would be redundant with Count II: breach of an implied contract, and so it construes the claim as one based on a contract implied-by-law, which they assert is better labeled an "unjust enrichment" claim under Maryland law; this, they argue, accords with California law in which *quantum meruit* "appears to refer only to contracts implied by law." (*Id.* at 7 & n.4, 8) (citing *Alts. Unlimited,* 155 Md.App. at 482-83). This differential treatment of the claim under the two laws touches too much on the merits and potential overlaps of these (purportedly) separate claims and so is inappropriate on this threshold question. Moreover, Aton clarifies that it meant to refer to a contract implied in fact on this count (ECF No. 14, at 6-7).

as Plaintiff argues.  Comparing this to a *quantum meruit* claim under California law, there is only one minute difference: to state this claim properly, Maryland law requires proof that the defendant was "reasonably notified" that the plaintiff intended to be compensated when providing the services in question, not that the defendant expressly or implicitly *requested* such services, as Defendant argues is required under California law.  *Compare Int'l Waste Indus. Corp. v. Cape Env't Mgmt. Inc.*, 988 F.Supp.2d 542, 544 (D.Md. 2013) (quoting *Alts. Unlimited*, 155 Md.App. at 415) *with Day v. Alta Bates Med. Ctr.*, 98 Cal.App.4th 243, 248 (2002)). Other California caselaw, however, renders the two claims indistinguishable.  *See Huskinson & Brown v. Wolf*, 32 Cal. 4th 453, 458 (2004) ("To recover in quantum meruit, a party need not prove the existence of a contract, but it must show the circumstances were such that the services were rendered under some *understanding or expectation* of both parties that compensation therefor was to be made.") (citations omitted) (emphasis added).

Nonetheless, if the claim is construed as a claim of unjust enrichment under Maryland law, as Defendants argue is proper, it would require only that Defendants "knew of or appreciated" Plaintiff had "conferred a benefit" on it.  (ECF No. 13-1, at 8) (citing *Alts Unlimited*, 155 Md.App. at 496).  Even accepting there is an added element of the claim under California law (a request for services), Defendants assert the result would be the same under

either law.  While Plaintiff instead argues that California law should apply, following the logic of *Loew*, it does not explain how this affects the outcome or where contract and quasi-contract law differs between the two.  (ECF No. 14, at 4).  Maryland law will therefore be applied to the first four claims.

California law applies to the fraud claims in Counts V-VII. The Court of Appeals of Maryland has said that "the [] doctrine of *lex loci delicti* . . . requires a tort action to be governed by the substantive law of the state where the wrong occurred." *Philip Morris Inc. v. Angeletti*, 358 Md. 689, 746 (2000).[7]  Plaintiff insists its contract and fraud claims are distinct, (ECF No. 14, at 13), yet it wholly fails to address the choice-of-law question as it relates to the latter.  In fact, as Defendants point out, it relies on California caselaw as to its fraudulent inducement claim, but then Maryland caselaw as to its negligent misrepresentation claim, and both on its fraudulent concealment claim, even though California law clearly governs all three; the claimed injuries were suffered by Aton and its patients there.  (ECF No. 17, at 3)

---

[7] There is some (perhaps feigned) confusion over Count VIII, as Defendants argue it fails as a claim under Maryland's Unfair Competition law, but Plaintiff asserts in opposition that this claim is brought under "California's Unfair Competition Law ('UCL') and not Maryland's."  (ECF No. 14, at 17).  The complaint makes explicit reference to Maryland's Commercial Code (ECF No. 1, ¶ 52), however, so such an attempted amendment through a responsive filing is improper, as Defendants argue.  (ECF 17, at 1-2).

(citing ECF No. 14, at 10-11, 16-17).[8]  These three claims will be governed by California law.

The allegations based in statute under Count VIII for "unfair competition" will be analyzed under § 13-101 *eq seq.* of Maryland's Commercial Law Code as referenced in the complaint.  (ECF No. 1, ¶ 52).  Defendants, however, suggest the allegations therein might also attempt to state a "common law claim for unfair competition." While they analyze this purported claim under both Maryland and California law, the injury of an unfair competition claim is typically considered felt where the injured party has its principal place of business.  *See, e.g.*, *Neuralstem, Inc. v. StemCells, Inc.*, No. AW-08-CV-1173, 2009 WL 2412126, at *4,*5 (D.Md. Aug. 4, 2009) (applying California law to an unfair competition claim and other tort claims "since [the counter-plaintiff's] reputation suffered the most harm in that state.").  California law should apply to this claim insofar as its states a common law claim.

Neither side, however, addresses what substantive law applies to the Account Stated claim (Count IX), but both the motion to dismiss and Plaintiff's opposition treat it under both Maryland and California law.  (*See* ECF No. 13-1, at 16) (ECF No. 14, at 18-

---

[8] As to the fraud claims, Plaintiff writes that "CareFirst cites California state court cases in their points and authorities. Reference to California law is helpful and consistent with Federal law." (ECF No. 14, at 11).  But there is no "Federal law" in this context, as a federal court sitting in diversity is required to apply the applicable *state* law under its choice-of-law rules.

19).   While there appears to be no Maryland caselaw on this point, a fairly recent case in the Southern District of New York notes that where the parties are silent on which law to apply to an account stated claim, a court should apply the law of the forum state. *Li & Fung (Trading) Ltd. v. Contemp. Streetwear, LLC*, No. 11 CV 2022(CM)(DCF), 2013 WL 3757080, at *5 n.4 (S.D.N.Y. June 6, 2013).   Maryland law will be applied to this claim, particularly as Defendants have shown that the claims are treated similarly under California law.  (ECF No. 13-3, at 16) (ECF No. 17, at 9).

## IV.  Analysis

### A.   The Contract Claims

Defendants first argue that Counts I-III should be dismissed as the "Complaint does not allege clear and definite promises or [] manifestations of mutual assent to definite terms." (ECF No. 13-1, at 4-5).

Judge Hollander has explained that under Maryland law, "A contract may be oral or written, as well as express or implied. 'An express contract has been defined as an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing.'" *Transam. Premier Life Ins. Comp. v. Selman & Comp., LLC*, 401 F.Supp.3d 576, 591 (D.Md. 2019) (quoting *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706 (2015)) (internal quotation marks omitted).  Regardless

14

of the medium of communication, "a contract must express *with certainty* the nature and extent of the parties' obligations and essential terms of the agreement" and one that is "too vague or indefinite" with respect to these items is unenforceable. *Id.* (quoting *Cty. Comm'rs for Carroll Cty. v. Forty W. Builders, Inc.*, 178 Md. App. 328, 377 (2008) (emphasis added) (relied upon by Defendant) and *Mogavero* 142 Md. App. at 272). "Similarly, a claim of promissory estoppel requires a 'clear and definite promise.'" (ECF No. 13-1, at 5) (citing *Dolan v. McQuaide*, 215 Md. App. 24, 32 (2013)). Additionally, Defendants argues that a breach of contract claim must show the parties' "intent to be bound." (ECF No. 13-1, at 4) (citing *Cochran v. Norkunas*, 398 Md. 1, 14 (2007)).

An implied-in-fact contract, under Maryland law, "is a 'true contract' and 'means that the parties had a contract that can be seen in their conduct rather than in an explicit set of words.' Implied-in-fact contracts are 'dependent on mutual agreement or consent, and on the intention of the parties; and a *meeting of the minds is required*.'" *Mohiuddin v. Doctors Billing & Mgmt. Sols.*, 196 Md.App. 439, 447 (2010) (quoting *Mogavero* 142 Md. App. at 275). Alternatively, "[a] claim for promissory estoppel [also known as a claim of "detrimental reliance"] is a 'device for contractual recovery, when an element of a traditional bilateral contract is lacking[,]' such as acceptance or consideration." *J.E. Dunn Const. Co. v. S.R.P. Dev. Ltd P'ship*, 115 F.Supp3d 593, 609 (D.Md. 2015)

15

(quoting *Transp. Auth. Police Lodge No. 34 of Fraternal Ord. of Police v. Md. Trans. Auth.*, 195 Md.App. 124, 218 (2010), *rev'd in part on other grounds*, 420 Md. 141, 21 A.3d 1098 (2011)); *see also Suburban Hosp., Inc. v. Sampson*, 807 F.Supp. 31, 33 (1992) (explaining promissory estoppel allows detrimental reliance to serve as "substitute for consideration.").

Plaintiff has not detailed a clear and definite promise to support an enforceable obligation, even if this "promise" was relied upon by Plaintiff to its detriment.  The complaint says that UCR is a "well-known term of art," and that Defendants affirmed their intent to reimburse Plaintiff based on it.  But it does not describe how the reimbursement rate is computed under the UCR, nor establish how it could yield a single and constant figure, 44.38%, that would have been known upfront as the proper reimbursement rate to apply "on 133 different claims, no matter the patient, no matter the service, no matter the date." (ECF No. 17, at 4).  As Defendants rightly argue, Plaintiff does nor point to any discussion in these calls as to specific patients, accounts, or to specific rates of reimbursement.  Nor, alternatively, does Plaintiff discuss how trade usage and/or the parties' prior dealings are able to supply the essential terms of this purported agreement or promise (or what those terms would be).  The complaint is entirely too vague to state a breach of contract claim, express

or implied, or to provide the kind of clear or definite promise
that would support Plaintiff's detrimental reliance claim.

In its opposition, Aton cites to *California Spine &
Neurosurgery Inst. v. United Healthcare Servs., Inc.*, No. 18-CV-
2867 PSG(AFM), 2018 WL 6074567, at *5 (C.D.Cal. June 28, 2018), in
which a motion to dismiss was denied because the defendant failed
to argue that it lacked an understanding of the "UCR rate" as a
trade usage, but rather only argued a VOB did not constitute a
"clear promise." (ECF No. 14, at 5).

Yet California law is, at best, persuasive on this issue, and
Plaintiff's reliance on it is odd considering that the majority of
other cases in California "have repeatedly held that VOB calls are
insufficient to establish a meeting of the minds as to definite
terms, and so cannot sustain claims for breach of express or
implied contract or promissory estoppel." (ECF No. 13-1, at 6).
As Defendants point out, this includes the *six* cases in the
Southern District of California containing claims "identical to
those at issue in Counts I through III" by Aton against related
health insurance providers that were dismissed, albeit without
prejudice. (*Id.*)(citing *Tenet Healthsystem Desert, Inc. v. Fortis
Ins. Co. Inc.*, 520 F.Supp.2d 1184, 1193-95 (C.D.Cal. 2007)); *Aton
Center, Inc. v. Blue Cross and Blue Shield of N. Carolina*, No.
3:20-cv-00492-WQH-BGS, 2020 WL 4464480, at *5 (S.D.Cal. Aug. 3,
2020) (citing *TML Recovery, LLC v. Humana, Inc.*, No. SACV 18-00462

17

(JDEx), 2019 WL 3208807, at *4 (C.D.Cal. Mar. 4, 2019)) ("VOB and authorization phone calls alone are generally insufficient to form the basis for an oral or implied contract because they lack a manifestation of intent to enter into a contract."); *Aton Ctr., Inc. v. Blue Cross and Blue Shield of S. Carolina*, No. 3:20-cv-00496-WQH-BGS, 2020 WL 4747752, at *3, *5 (S.D.Cal. Aug. 17, 2020) (same); *Aton Ctr., Inc. v. Premera Blue Cross*, No. 3:20-cv-00501-WQH-BGS, 2020 WL 4747756, at *3, *5 (S.D.Cal. Aug. 17, 2020) (same); *Aton Ctr., Inc. v. Blue Cross & Blue Shield of Illinois*, No. 3:20-cv-00500-WQH-BGS, 2020 WL 4747755, at *3, *5 (S.D.Cal. Aug. 17, 2020) (same); *Aton Ctr., Inc. v. Regence Blue Shield of Washington*, No. 3:20-cv-00498-WQH-BGS, 2020 WL 4747754, at *3, *5 (S.D. Cal. Aug. 17, 2020) (same); *Aton Ctr., Inc. v. Regence Blue Cross Blue Shield of Oregon*, No. 3:20-cv-00497-WQH-BGS, 2020 WL 4747753, at *3,*5 (S.D.Cal. Aug. 17, 2020) (same).

In one of the few, if not only, Maryland cases touching on a VOB as the basis for a contractual claim, the court construed a claim that the plaintiff had relied upon a VOB to its detriment as a promissory estoppel claim. The court, however, found that such a claim was beyond the court's jurisdiction and remanded the case to state court, where its fate is unclear. *Suburban Hosp., Inc. v. Sampson*, 807 F.Supp. 31, 34 n.3 (D.Md. 1992). In other jurisdictions, however, reliance on a VOB is not foreclosed as a matter of law, even where there is evidence the calls contained a

18

disclaimer that a VOB is not a guarantee of payment. *See, e.g.,*
*Chiron Recovery Ctr., LLC v. AmeriHealth HMO of N.J., Inc.*, No.:
9-16-CV-82043-ROSENBERG/HOPKINS, 2017 WL 11220686, at *3 (S.D.Fla.
Dec. 12, 2017) (denying summary judgment on this issue); *see also*
*Miami Children's Hosp. Inc. v. Kaiser Found. Health Plan, Inc*, No.
08-23218-CIV, 2009 WL 1532125, at *5 (S.D.Fla. May 29, 2009)
(declining to dismiss a VOB claim and construing it to state a
promissory estoppel claim); *but see Advanced Ambulatory Surgical*
*Ctr. v. Conn. Gen. Life Ins. Co.*, 261 F.Supp.3d 889, 896 (N.D.Ill.
2017) ("Because the plaintiff offered no evidence that the insurer
made an oral promise of reimbursement or indeed did anything more
than confirm coverage as indicated on the forms, summary judgment
to the defendant on the [] promissory estoppel claim was proper.").

Defendants argue that leave to amend should be denied.  They
argue that Aton filed amended complaints in its dismissed cases in
California *before* it filed its first complaint here, even though
this complaint remains nearly "identical" to the original
complaints in those cases.  Plaintiff, they argue, therefore
"knowingly wasted this Court's, and CareFirst's, time and
resources" by submitting a document to this court that another had
already deemed deficient, instead of proactively amending it. (ECF
No. 17, at 10-11).  Defendants also highlight that, at the time of
their motion, a decision as to the *amended* complaint had been
reached in one of the six cases. *See Aton Ctr. Inc. v. Blue Cross*

19

*and Blue Shield of N.C.*, 2021 WL 321981 (S.D.Cal. Feb. 1, 2021). As Defendants write, "The Court found that, even as amended, Aton's complaint still failed to state a claim for breach of implied contract, *quantum meruit*, intentional misrepresentation (fraudulent inducement), negative misrepresentation, fraudulent concealment, violation of California's UCL, and open book count." (ECF No. 17, at 11). Defendants concede, however, that that court *did* allow both Plaintiff's claim for breach of oral contact and promissory estoppel to survive. *Aton v. Blue Cross of N.C.*, 2021 WL 321981, at *5-*6. On February 16, 2021, after Defendants' motion was filed here, an identical decision was reached in four of the five other cases. *See Aton Ctr., Inc. v. Blue Cross and Blue Shield*, 2021 WL 615051 (S.D.Cal. Feb. 16, 2021); *Aton Ctr., Inc. v. Regence Blue Cross Blue Shield of Oregon*, 2021 WL 615050 (S.D.Cal. Feb. 16, 2021); *Aton Ctr., Inc. v. Regence Blue Shield of Wash.*, 2021 WL 615049 (S.D.Cal. Feb. 16, 2021); *Aton Ctr., Inc. v. Premera Blue Choice*, 2021 WL615048 (Feb. 16, 2021).

Judicial notice *could* be taken of the filings in these cases, as Defendants invite. (ECF No. 17, at 10 n.4) Yet Defendants are attempting to argue a form of defensive non-mutual issue preclusion in all but name and without citing supportive caselaw or describing the issues purportedly foreclosed by these other cases. They also ignore the difference in applicable law. Moreover, the fact that the breach of an oral contract and promissory estoppel claims were

allowed to survive once amended, despite the fact that California law on VOB calls is controlling there (and not here), suggests that an attempt by Plaintiff to amend its complaint along these lines would not necessarily be futile in this case, either.

Counts I-III will be dismissed, albeit without prejudice given that Maryland caselaw has not foreclosed the possibility that VOB calls, described with the proper detail, *could* form the basis for a breach of contract, either express or implied, or, alternatively, a promissory estoppel claim.

**B.  *Quantum Meruit***

Plaintiff alleges in Count IV that Defendants "communicated to Plaintiff" that the "insureds/patients whose claims are at issue herein were insured and that the claims would be covered based on the UCR rate and prior history of dealings."  In turn, Aton argues that it reasonably relied on those representations and the "conduct of the Defendants" when providing "substance abuse treatment services" to the patients in question. (*Id.*, ¶ 32).  Despite billing Defendants for "the reasonable value of those services," CareFirst "refused . . . and instead have only paid a small fraction [of that amount]."  It argues that "Defendants should be required to pay the remainder" owed. (ECF No. 1, ¶¶ 30-34).

As both parties discuss, *quantum meruit* refers to two distinct theories under Maryland law: one to support an implied contract claim and one to support a quasi-contractual claim.  *Mohiuddin*,

21

196 Md.App. at 447.   CareFirst construes the claim as the latter
and argues that the claim cannot survive.   Such a quasi-contract
claim is "measured by the gain to the defendant, not the loss by
the plaintiff." (ECF No. 13-1, at 8) (quoting *Mass Transit Admin.*
*V. Granite Const. Co.*, 57 Md. App. 766, 775 (1984)).   As such, it
requires that CareFirst retain a benefit from Aton's services in
some way.   (*Id.*) (quoting *Alts. Unlimited*, 155 Md.App. at 496)).
Based on the alleged facts, however, Defendants argue the "only
'benefit' Aton provided — residential substance abuse treatment —
was provided to the seven individual patients who sought and
received treatment, not to CareFirst." (*Id.*).

Plaintiff counters that it alleges an implied contract, not
a quasi-contract, and that this claim is validly stated under
Maryland law.   This form of *quantum meruit*, it argues, *does not*
*require* a benefit to be conferred on Defendants but rather is based
on the "amount that the parties intended as the contract price or,
if that amount is unexpressed, the fair market value of the
plaintiff's services." (ECF No. 14, at 6-7) (quoting *Alts.*
*Unlimited*, 155 Md.App. at 486).   Construing the claim in this way,
however, makes it entirely duplicative of Count II, as Defendants
re-assert in reply (ECF No. 17, at 4); both theories are predicated
on recovering for services rendered with the expectation of payment
and where the other party expected, or "should have expected," to
pay for them, even though these expectations were not communicated

expressly.  *Kantsevoy v. LumenR LLC*, 301 F.Supp.3d 577, 598–99 (D.Md. 2018) (citing, among others, *Mogavero*, 142 Md.App. at 275, and quoting *Mohiuddin* 196 Md. App. at 447) (internal quotation marks omitted).  Insofar as this claim states a theory of recovery based on an implied contract, it will be dismissed.

### C.  The Fraud Claims

Plaintiff's fraud claims come in three forms: V) Intentional Misrepresentation (Fraudulent Inducement), VI) Negligent Misrepresentation, and VII) Fraudulent Concealment.  Where the contract claims end and the tort claims begin, however, is unclear.

Each has a (somewhat) separate theory of fraud.  As to the fraudulent inducement claim, Plaintiff vaguely alleges that during "negotiations" between itself and Defendants, occurring "[w]ithin the past two years," "Defendants . . . falsely and fraudulently made representations to Plaintiff," "with intent to deceive and defraud Plaintiff."  (ECF No. 1, ¶ 36).  Within the negligent misrepresentation claim, Plaintiff argues that "Defendants had a duty to provide accurate/correct information regarding benefits when contacted by providers[,] and it was and is foreseeable to Defendants that providers would rely on the information given to them[,] and that providers would be damaged if they were provided with incorrect information."  Defendants purportedly made such claims with "no sufficient or reasonable grounds for believing them to be true" and allegedly understood that without "accurate

23

information and data" to support such claims, they could not be accurately made. (*Id.*, ¶ 42). Finally, as to the fraudulent concealment claim, the complaint states that "Defendants . . . actively fraudulently concealed material facts regarding the coverages and/or rates that it would pay from Plaintiff." As a "direct and proximate result" of this concealment, they argue they "sustained damages as alleged herein" (*Id.*, ¶ 45).

Under the federal rules, fraud claims, although grounded in state substantive law, are subject to a heightened pleading requirement. The Southern District of California has explained:

> In federal court, where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

> Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); . . . In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *Id.* at 1548.

*Jerome's Furniture Warehouse v. Ashley Furniture Indus., Inc,*
No.:20CV1765-GPC(BGS), 2021 WL 1541649, at *4 (S.D.Cal. Apr. 20,
2021).

   These claims, as Defendants argue, however, are barred by the
California economic loss rule.   (ECF No. 13-1, at 12).   "The
economic loss rule generally bars tort claims for contract
breaches, thereby limiting contracting parties to contract
damages." *United Guar. Mortg. Indem. Co. v. Countrywide Fin.*
*Corp.*, 660 F.Supp.2d 1163, 1180 (C.D.Cal. 2009) (quoting *Aas v.*
*Super. Ct.*, 24 Cal. 4th 627, 643 (2000)) ("A person may not
ordinarily recover in tort for the breach of duties that merely
restate contractual obligations.").   "The rule 'prevents the law
of contract and the law of tort from dissolving into one another'"
and is "particularly strong when a party alleges 'commercial
activities that negligently or inadvertently [went] awry.'"  *Id.*
(quoting *Robinson Helicopter Co., Inc. v. Danna Corp.*, 34 Cal.4th
979, 988, 991 n.7 (2004)).

   The fraud claims fail even to attempt to allege that a duty
exists apart from those under the purported contract.  As with the
negligent misrepresentation claim, for example, Plaintiff does not
distinguish the purported "duty to provide accurate/correct
information regarding benefits" from that which arose out of the
VOBs, and which form the basis of the contract claims.   The
reference to "sustained damages as alleged herein" only highlights

that the overlap between the contract claims and fraud claims is total given that the only specific form of damages mentioned is the "unpaid balance of $238,309.12" from allegedly underpaid reimbursements; this is the same amount specifically requested as damages for Count I, the breach of contract claim. (*See* ECF No. 1, ¶¶ 17, 21). The economic loss doctrine bars these fraud claims.

Defendants correctly anticipates Aton's counter in its motion to dismiss: "a properly ple[d] claim for fraudulent inducement may . . . be an exception to the economic loss rule." (ECF No. 13-1, at 12-13) (citing *Food Safety Net Servs. V. Eco Safe Sys. USA*, 147 Cal.Rptr.3d 634, 645 (Cal.Ct.App. 2012)) (citing *Robinson*, 22 Cal.Rptr.3d at 989-991) (proceeding on the logic that "fraudulent inducement of the pertinent contract" itself presents the "violation of 'some independent duty arising from tort law.'"). The logic of this exception is clear: a contract induced by fraudulent deception constitutes a wrong separate from a breach of that contract. Plaintiff relies on *United Guar. Mortg.* to argue its claim of fraudulent inducement fits this carve-out of the rule.

Only a *properly pled* claim, however, may serve as an exception to the economic loss rule. (*See* ECF No. 14, at 12) (quoting *United Guar. Mortg.*, 660 F.Supp.2d at 1180). Indeed, as Defendants argue, a "properly pled" fraudulent inducement claim requires facts sufficient to show "the *existence of an intent at the time of the promise* not to perform it." (ECF No. 17, at 6) (quoting *Bldg.*

26

*Permit Consultants, Inc. v. Mazur*, 19 Cal.Rptr.3d 562, 572 (Cal.Ct.App. 2004)). A simple failure to perform does not suffice as direct or circumstantial evidence of the present intent to defraud necessary to support this claim. *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F.Supp.3d 1092, 1110 (C.D.Cal. 2015) (citing *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30-31 (1985)) (granting a motion to dismiss, as "nonperformance alone will not support a finding of promissory fraud."[9]).

Defendants correctly assert that the "Complaint does not allege a single fact that would give rise to a plausible inference that CareFirst had no present intent to pay Aton's claims based on the UCR when it allegedly said it would." (ECF No. 17, at 6-7). Plaintiff counters that it should be allowed to plead its fraud claims in the alternative as "the court/jury could find that there is no oral or implied contract, but there is fraud." "[T]o apply the economic loss rule at this stage . . . would run afoul of Aton's right to plead inconsistent alternative legal causes of action." (ECF No. 14, at 13-14).

Plaintiff is well within its right to plead inconsistent legal theories in the alternative at this stage. But it may not assert

---

[9] California caselaw has explained that "promissory fraud" is a "subspecies of fraud" and it "may lie where a defendant fraudulently induces the plaintiff to enter a contract." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (citing *Chelini v. Nieri*, 32 Cal.2d 480, 487 (1948) (en banc)). The two are therefore synonymous in this context. (*See* ECF No. 13-1, at 13 n.6).

fraud claims that are entirely duplicative of a contract claim. With the very *pleading* of such claims disallowed, whether they logically can be proven in the alternative is irrelevant.[10]

Moreover, even if the economic loss doctrine does not apply, the negligent misrepresentation and fraudulent concealments claims would still fail. "Under California law, negligent misrepresentation has the following elements: '(1) The defendant must have made a representation as to a past or existing material fact, (2) which was untrue, (3) which, regardless of the defendant's actual belief, was made without any reasonable grounds for believing it was true, and (4) which was made with the intent to induce the plaintiff to rely upon it; (5) the plaintiff justifiably relied on the statement, and (6) plaintiff sustained damages.'" *Tenet*, 520 F.Supp.2d at 1195 (quoting *Cedars Sinai Med. Ctr. v. Mid-West Nat. Life Ins. Co,* 118 F.Supp.2d 1002, 1010 (C.D.Cal. 2000)). "The alleged representation concerns future conduct . . . which cannot form the basis for a negligent misrepresentation claim." *Id.* (citing *Magpali v. Farmers Grp. Inc.*, 48 Cal.App.4th 471, 481-82 (1996)). The factual differences

---

[10] Plaintiff also attempts to pull all three fraud claims out of the reach of the economic loss doctrine by arguing that "the fraud claims alleged . . . are grounded on a properly alleged fraudulent inducement [claim]." Defendants are right that, "This suggestion ignores that each count asserts a distinct theory of liability," and that neither Count VI nor Count VII involve the "inducement" theory/element that provides an exception to the economic loss doctrine. (ECF No. 17, at 6 n.3).

in this case and the fact that it was decided on summary judgment
(ECF No. 14, at 6), does not detract from the fact that this is a
basic requirement of this claim at any stage.

Here, the complaint entirely revolves around information
regarding *future* reimbursements and does not specify a single "past
or existing fact" that CareFirst represented to Aton, let alone
evidence suggesting that such representations objectively were
"untrue" at the time they were made. Even accepting such promises
of future conduct were "made without reasonable or sufficient
grounds for believing them to be true" (ECF No. 1 ¶ 42), Plaintiff
does not state a plausible claim for negligent misrepresentation.

Alternatively, the Fraudulent Concealment count alleges the
concealment of "material facts regarding the coverages and/or
rates that it would pay from Plaintiff." (ECF No. 1, ¶ 44). Such
conclusory statements do not suffice. For one, Plaintiff only
discusses this claim under Maryland law, which does not apply. As
the Northern District of California has explained,

> For an omission to be actionable under
> California fraudulent concealment, a
> plaintiff must show that:
>
> (1) the defendant must have
> concealed or suppressed a material
> fact, (2) the defendant must have
> been under *a duty to disclose* the
> fact to the plaintiff, (3) the
> defendant must have intentionally
> concealed or suppressed the fact
> with the intent to defraud the
> plaintiff, (4) the plaintiff must

> have been unaware of the fact and
> would not have acted as he did if he
> had known of the concealed or
> suppressed fact, and (5) as a result
> of the concealment or suppression of
> the fact, the plaintiff must have
> sustained damage.

*Ahern v. Apple, Inc.*, 411 F.Supp.3d 541, 561 (N.D.Cal. 2019)

(emphasis added) (citing *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F.Supp.3d 1113, 1133 (N.D.Cal. 2018)).

As Defendants point out, the closest the claim comes to stating the violation of a legal duty is by alleging "active concealment." (ECF No. 17, at 7) (citing ECF No. 1, ¶ 44). Plaintiff seems to conflate such "active concealment" with the inducement theory stated under Count V but does not cite to caselaw to establish that such an offense would give rise to a legal duty to disclose or would exempt such a claim from the Economic Loss Doctrine. Neither does it describe the nature or contents of the purported concealment with any specificity; it cannot be saved by its vague, catch-all reference to the other allegations: asserting the concealment occurred "by way of example and without limitation, among other things, as alleged herein." (ECF No. 1, ¶ 44).

Counts VI and Count VII will be dismissed with prejudice. Any attempt to amend the fraudulent concealment or negligent misrepresentation claims would be futile, even if pled with the specificity required by Fed.R.Civ.P. 9(b), as they are, by their very nature, entirely duplicative of the contract claims and thus

invariably barred by the Economic Loss Doctrine.  That said, if Plaintiff is able to point to any facts that plausibly suggest that Defendants committed Fraudulent Inducement with the present intent not to honor the representations it made through its speech or conduct, during and after the VOB calls, such a claim could survive being barred by the Economic Loss Doctrine.  Therefore, Plaintiff will be granted leave to amend Count V.

### D. Unfair Competition

The unfair competition claim states:

> Plaintiff seeks compensation for the damages arising from the conduct and activities of Defendants in violation of § 13-301 the Maryland Commercial Law Code as alleged herein, including but not limited to ill-gotten financial gains related to the false disparagement and/or misleading statements associated with approval of consumer services, and restitutionary damages. . .

(ECF No. 1, § 51).  Plaintiff also requests "injunctive relief" prohibiting Defendants from engaging in the activity complained of because, it argues, the harm of not doing so outweighs "any possible harm to Defendants." (*Id.*, § 53).  Ultimately, it argues that Defendants have engaged in and are actively engaging in "unfair, unlawful and fraudulent business practices." (§ 54).

As to any statutory unfair competition claim, however, Judge Xinis has explained that, that "Section 13-303 causes of action [under Maryland's Commercial Code] are limited to 'consumers'

purchasing 'consumer' goods or services." *Legends Awards for Serv. To Human., Inc. v. Hum. Symphony Found., Inc.*, No. PX 16-3094, 2017 WL 3868586, at *5 (D.Md. Sept. 5, 2017) (citing *Boatel Indus. V. Hester*, Md.App. 284, 303 (1998) and *Penn-Plax, Inc. v. L. Schultz, Inc.*, 988 F.Supp. 906, 909-11 (D.Md. 1997) (collecting Maryland cases and relied upon by Defendants)). Any claim under Maryland's code section in this case, even with amendment, would invariably fail and will be dismissed with prejudice.

Perhaps sensing the weakness of this claim, Plaintiff attempts to argue that the complaint alleges a claim under California's UCL. (ECF No. 14, at 17). As Defendants correctly point out, however, "Even if Aton could amend its pleading by way of motions briefing, California's UCL simply does not have the extraterritorial reach to govern CareFirst's alleged conduct." (ECF No. 17, at 2). The Eastern District of California has explained this in succinct terms:

> Because violation of California's UCL is a state law claim, "the UCL reaches any unlawful business act or practice committed *in California*." *Sullivan,* 51 Cal.4th at 1207, 127 Cal.Rptr.3d 185, 254 P.3d 237 (citing Cal. Bus. & Prof.Code § 17200) (emphasis added). There is a presumption against extra-territorial application. *Id.* (citing *Diamond Multimedia Sys., Inc. v. Superior Court,* 19 Cal. 4th 1036, 1059 (1999)). "[T]he presumption against extraterritoriality applies to the UCL in full force." *Id.* (citing *Norwest Mortgage, Inc. v. Superior Court,* 72 Cal.App.4th 214, 222-225, 85 Cal.Rptr.2d 18 (1999)). California's UCL may

> only be applied extraterritorially where the
> unlawful conduct that forms the basis of the
> out-of-state plaintiff's claim occurs in
> California.  *Id.* at 1207–09.

*Fontenberry v. MV Transp., Inc.*, 984 F.Supp.2d 1062, 1067 (E.D.Cal. 2013).  While the purported *injury* was felt in California, and while the exact location of the CareFirst agents who purportedly committed the unfair practices (over the phone) is not known, there is no suggestion that *any* of the allegedly unlawful conduct was *committed* in California.  Plaintiff will not be granted leave to amend its complaint to state a claim under California's UCL, as amendment would be futile.

Any purported common law claim for unfair competition would similarly fail.  While Maryland common law might not be limited solely to cases alleging that a business is "passing off" its competitor's goods as one own, as Defendants argue,[11] California law, not Maryland law, controls on this issue.  The Southern District of California has explained that California's common law

---

[11] Judge Hollander relied on a case cited by Defendants on this point.  She wrote, "unfair competition is not limited to 'passing off' a competitor's wares as one's own."  *Farm Fresh Direct Direct By a Cut Above LLC v. Downey*, No. ELH-17-1760, 2017 WL 4865481, at *10 (D.Md. Oct. 26, 2017) (quoting, among others, *Edmondson Village Theatre v. Einbinder*, 208 Md. 48, 46 (1955)) (denying a motion to dismiss a Lanham Act and Maryland common law claim of unfair competition).  Nor does it seem that the law is confined solely to direct competitors: "Maryland's common law tort of unfair competition can extend to 'all cases . . . in the field of business.'"  *Id.* (quoting *Elecs. Store, Inc. v. Cellco P'ship.*, 127 Md.App. 385, 407 (1999)).

unfair competition cause of action also has its "origins in allegations of 'passing off.'" *SkinMedica, Inc. v. Histogen, Inc.*, 869 F.Supp.2d 1176, 1187 (S.D.Cal. 2012) (quoting *Bank of the W. v. Super. Ct.*, 2 Cal 4th 1254, 1263 (1992) (relied upon by Defendants)). Although the defendant in that case tried to extend the tort beyond this context, the court wrote, the "attempt to extend common law unfair competition beyond its grounding in consumer deception is unavailing." *Id.* at 1188.

California courts have noted *some* suggestion that the tort has expanded over time, but have reaffirmed it is still relegated, as stated in *Bank of the West*, to "claims that are 'analogous to passing off, such as the sale of confusingly similar products, by which a person exploits a competitor's reputation in the market.'" *Oracle Corp. v. DrugLogic, Inc.*, No. C 11-00910 JCS, 2011 WL 5576267, at *14 (N.D.Cal. Nov. 16, 2011) (quoting *Bank of the W.*, 2 Cal. 4th at 1263).

As Defendants correctly assert, the complaint here "does not allege that CareFirst is deceiving the public by passing Aton's goods off as its own or otherwise taking advantage of Aton's good will and business reputation; it does not allege a *competitive* injury." (ECF No. 13-1, at 16). Therefore, the allegations raised in the Complaint are not the kind recognized under California unfair competition common law, and so any claim of this kind put forth by Plaintiff is also dismissed with prejudice.

### E.    Account Stated

Plaintiff's final claim, Count IX, states "Plaintiff and Defendants, in the course of their dealings alleged above, had financial transactions which Plaintiff recorded in its regular course of business as patient healthcare claims, and Plaintiff kept an account of the debits and credits involved in these transactions in a reasonably permanent form."  It continues in the next paragraph, "By virtue of the course of dealings between the parties, and the accounting maintained by Plaintiff related thereto, Defendants owe Plaintiff money on an account stated. Defendants currently owe Plaintiff a monetary debt on the account in the amount of $238,309.12 together with interest at the legal rate."  (ECF No. 1, ¶¶ 56-57).

Judge Gallagher has recently explained that:

> Under Maryland law, "an account stated is an agreement between the parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such a balance.'" *Radio Parts Ct. v. Lowry,* 125 B.R. 932, 943–44 (D.Md. 1991).  The elements of a claim for amount stated include:
>
> > (i)   A   previous   transaction(s) between the parties giving rise to the indebtedness from one to the other; (ii) a rendition of an account to the party sought to be charged reciting the amount of the present existing debt owed by one party to the other; and (iii) a

> promise, express or implied, to pay
> this balance.

*Kratos Def. & Rocket Support Servs., Inc. v. VOR Tech.*, No. SAG-18-03373, 2020 WL 1873932, at *6 (D.Md. Apr. 15, 2020) (quoting *Wathen v. Pearce,* 175 Md. App. 651, 661 (1939).

Defendants argue that, under Maryland law, "[A] definite acknowledgment of a subsisting debt immediately payable to the plaintiff" is "[a]n indispensable ingredient" of an account stated claim. (ECF No. 13-1, at 16) (citing *Balt. Cty. V. Archway Motors, Inc.*, 35 Md.App. 158, 167 (1977)). Indeed, even taken as true, the complaint, at most, plausibly states that CareFirst agreed it would prospectively reimburse Aton at the 44.38% that the UCR provides. It never shows assent to an amount owed for any particular patient by Defendants. Plaintiff insists in opposition that there has been "assent in the past" which suffices to show an amount due. Even if the opposition could amend the complaint in this way, this assertion would not suffice to state this type of claim under Maryland law. Assuming that Plaintiff can show plausibly that the previous course of dealing, which it alleges in conclusory fashion and without any concrete detail, gives rise to the alleged debt here, nowhere does it allege or attempt to show that Defendants acknowledged or agreed that they owed *this* particular amount to Plaintiff at the time it became due. Nonetheless, the fact that Aton was found not properly to state

36

assent to a "book account" under California law against related insurance agencies based in other states does not mean that amendment of this claim would be futile in this case.  The motion to dismiss this claim will be granted, but Plaintiff will be granted leave to re-assert this claim with more particularity.

## V.   Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted as to all claims.  Plaintiff, however, will be granted leave to amend the three contract claims in Counts I, II, III, and Counts V for Fraudulent Inducement and IX for Account Stated.  A separate order will follow.


                                         /s/
                              _____
                              DEBORAH K. CHASANOW
                              United States District Judge