```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MARYLAND
                                   :
ATON CENTER, INC.
                                   :
     v.                            :  Civil Action No. DKC 20-3170
                                   :
CAREFIRST OF MARYLAND, INC.,
et al.                             :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this health insurance contracting case is a motion for leave to amend filed by Plaintiff AToN Center, Inc. ("AToN"). (ECF No. 20). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion for leave to amend will be granted in part and denied in part.

**I. Background**

The background of this litigation, which centers on the claims of an inpatient substance abuse treatment facility that a health insurer paid it less than promised during various verification of benefits (VOB) phone calls, is documented in a previous opinion. (ECF No. 18, at 2-5). That opinion and the accompanying order, issued on May 10, dismissed AToN's claims but invited the company to file a motion for leave to amend its express contract, implied contract, promissory estoppel, fraudulent inducement, and account

stated claims.  (ECF No. 19, ¶¶ 2-4).  Seven days later, AToN accepted the invitation by filing the motion at issue.  (ECF No. 20).  The proposed amended complaint is included as Exhibit A to the motion, and a redline version is included as Exhibit B.  (*Id.*, at 4, 19).  AToN attempts to address issues identified in the prior opinion by adding new factual allegations.  Defendants CareFirst of Maryland, Inc., Group Hospital and Medical Services, Inc., doing business as CareFirst BlueCross BlueShield, and CareFirst BlueChoice, Inc. (collectively "CareFirst") opposed, (ECF No. 21), and AToN replied, (ECF No. 23).

## II.  Standard of Review

When, as here, the right to amend as a matter of course has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed.R.Civ.P. 15(a)(2).  Rule 15(a)(2) provides that courts "should freely give leave [to amend] when justice so requires[,]" and commits the matter to the discretion of the district court.  *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011).  "A district court may deny a motion to amend when . . . the amendment would be futile."  *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010) (citation omitted).  "A proposed amendment is [] futile if the claim it presents would not survive a motion to dismiss."  *Save Our Sound OBX, Inc. v. N.C.*

*Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019) (citation omitted).

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). "[T]he district court must accept as true all well-pleaded allegations and draw all reasonable factual inferences in plaintiff's favor." *Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). A plaintiff's complaint need only satisfy the standard of Fed.R.Civ.P. 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A Rule 8(a)(2) "showing" still requires more than "a blanket assertion[] of entitlement to relief," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), or "a formulaic recitation of the elements of a cause of action[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Mays*, 992 F.3d at 299-300 (quoting *Iqbal*, 556 U.S. at 663).

**III. Analysis**

    **A.   Choice of Laws**

In its May 10 Memorandum Opinion, this court held that California law applies to Plaintiff's fraudulent inducement claim but that the applicable law for Plaintiff's contract-based and

3

account stated claims could not be determined.  (ECF No. 18, at 6-14).  The court looked to Maryland law to resolve the contract-based claims, after finding it appropriate to default to the law of the forum state, at least where no relevant conflict exists between that state's law and the laws of other states asserted by the parties.  (*Id.*, at 9-10, 12).  The court also defaulted to Maryland law to resolve the account stated claim, as is appropriate where parties simply fail to identify which state's law applies.  (*Id.*, at 14).

Plaintiff did not suggest in its motion for leave to amend that new allegations altered the status quo for the contract-based and account stated claims.  (*See generally* ECF No. 20-1).  Defendants argued affirmatively that the court should continue to default to Maryland law.  (ECF No. 21, at 6).  On reply, Plaintiff newly asserted, in one sentence, that California law applies to those claims and argued accordingly.  (*See* ECF No. 23, at 4-6, 9).

The court will not take up this untimely argument and again defaults to Maryland law for AToN's contract-based and account stated claims.  Additional briefing is needed to determine whether AToN pleads enough facts to determine the applicable law.  For both sets of claims, there is still every reason to conclude that Maryland and California law do not differ in relevant respects.  Plaintiff does not argue otherwise.  In addition, neither party has presented the choice of law standard for account stated claims.

B.   Contract-Based Claims

"A contract may be oral or written, as well as express or implied." *Transam. Premier Life Ins. Co. v. Selman & Co., LLC*, 401 F.Supp.3d 576, 591 (D.Md. 2019). An express contract is "an actual agreement of the parties, the terms of which are openly uttered or declared at the time of making it, being stated in distinct and explicit language, either orally or in writing." *Id.* (quoting *Maryland Cas. Co. v. Blackstone Int'l Ltd.*, 442 Md. 685, 706 (2015) (quotation omitted)). An implied-in-fact contract is identified from the parties' "conduct rather than in an explicit set of words." *Mohiuddin v. Drs. Billing & Mgmt. Sols.*, 196 Md.App. 439, 447 (2010) (quotation omitted). Promissory estoppel permits contract recovery "when an element of a traditional bilateral contract is lacking[,] such as acceptance or consideration." *J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 609 (D.Md. 2015) (quoting *Md. Transp. Auth. Police Lodge No. 34 v. Md. Transp. Auth.*, 195 Md.App. 124, 218 (2010), *rev'd in part on other grounds*, 420 Md. 141 (2011)).

"[A] contract must express with certainty the nature and extent of the parties' obligations and essential terms of the agreement"; one that is "too vague or indefinite" is unenforceable. *Transam. Premier*, 401 F.Supp.3d at 591 (quoting *Cnty. Comm'rs for Carroll Cnty. v. Forty W. Builders, Inc.*, 178 Md.App. 328, 377-78 (2008); *Mogavero v. Silverstein*, 142 Md.App. 259, 272 (2002)).

5

"Similarly, a claim for promissory estoppel requires a clear and definite promise." *Dolan v. McQuaide*, 215 Md.App. 24, 32 (2013) (quotation omitted).

The question at issue is whether Plaintiff alleges with sufficient definiteness that CareFirst promised to pay a specific price for its medical services. (ECF No. 21, at 6-8). In its original complaint, Plaintiff failed to do so. It had not "point[ed] to any discussion in [the VOB] calls as to specific patients, accounts, or to specific rates of reimbursement" nor alleged "how trade useage and/or the parties' prior dealings" pointed to CareFirst's assent to particular rates. (ECF No. 18, at 16). Indeed, Plaintiff had not even "describe[d] how the [UCR] reimbursement rate is computed[.]" (*Id.*).

1. **Complaint Amendments**

AToN's attempts to address these shortcomings are somewhat contradictory and confusing. First, it offers specific details about the VOB phone calls between AToN and CareFirst regarding seven patients. (ECF No. 20, at 9-12). AToN alleges that CareFirst representatives authorized care and "advised in these [] calls that the policies provided for and Defendants would pay for inpatient treatment, based on the UCR." (*Id.*, at 9 ¶ 14). For two patients, no other information was provided. (*Id.*, at 9, ¶¶ 14(a)-(b)). The CareFirst representatives offered different and inconsistent information for the other five. The care for one

6

would be paid at "44.39% of the providers [sic] billed amount," two others would be at "60% of ATON's billed charges," another would be at "70% of ATON's billed charges," and another still would be at "80% of ATON's billed charges." (*Id.*, at 10-11, ¶¶ 14(c)-(g)).  AToN explains that these "minor variations" are the result of the patients having different plans.  (ECF No. 23, at 5).

AToN further alleges that CareFirst stated the claims "would be processed by the 'local' Anthem Blue plan" based on the UCR and identified "a pricing policy for [out-of-network] providers"—"SBA Bulletin # 07-107R7"—which "set pricing for [out-of-network] residential treatment care] claims at 44.38% of the billed amounts." (ECF No. 20, at 12 ¶ 15).  AToN alleges that CareFirst promised to "pay for inpatient treatment[] based on the UCR" on all the calls.  (*Id.*, at 9, ¶ 14).  It is less clear whether AToN alleges that the policy document was provided during every call.  (*See id.*, at 12 ¶ 15 (describing the information being conveyed "[d]uring the VOB calls referred to above")).  If so, that would be a basis for AToN's insistence that CareFirst committed itself to 44.38% of the billed amount for every patient.  In the alternative, AToN may contend that the document established a commonly understood minimum for the UCR, and is simply the lowest possible amount owed by CareFirst on up to seven different contracts or promises.

### 2. Express Contract and Promissory Estoppel

Despite the confusion, AToN alleges sufficiently definite promises for its breach of express contract and promissory estoppel claims. Not only does AToN specify the precise percent of the billed amount that CareFirst allegedly promised to pay during the VOB calls, but it identifies the dates, times, participants, and reference numbers for the calls. It also alleges that CareFirst shared a specific policy document identifying the out-of-network payment rate for residential treatment care as 44.38% of the billed amount. If true, CareFirst may have entered into an express oral contract, made an offer binding upon performance, or made a promise on which AToN could reasonably rely during the calls. That it remains necessary to determine whether CareFirst committed to a 44.38% rate or another rate does not preclude suit. AToN clearly alleges that CareFirst's payments were less than any rate allegedly promised. This question of fact can be resolved later.

There is no reason to believe the result would be different under California law. Although CareFirst does not raise this challenge anew, (*see* ECF No. 13-1, at 6), AToN successfully argues that contract claims grounded in VOB calls may be allowed under both Maryland and California law. As discussed in the May 10 Memorandum Opinion, Maryland has not specifically addressed whether a VOB call can be the basis for a contract. (ECF No. 18, at 18). It appears California courts have "divergent views" on

8

the subject, *Enloe Med. Ctr. v. Principal Life Ins. Co.*, No. 10-cv-2227-KJM, 2011 WL 6396517, at *6 (E.D.Cal. Dec. 20, 2011), but some have held that VOB calls can create a contract where the parties specifically identify the services authorized and the payment rate, *see, e.g.*, *Aton Ctr., Inc. v. Blue Cross and Blue Shield of Ill.*, No. 20-cv-0500-WQH, 2021 WL 615051, at *4 (S.D.Cal. Feb. 16, 2021) (citing *Pac. Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal.App.5th 200, 216 (2017)).

AToN's motion for leave to amend its express contract and promissory estoppel claims, Counts I and III in the proposed amended complaint, will be granted.

### 3. Implied-in-Fact Contract

AToN fails to state a claim for breach of implied contract because no alleged conduct implies an agreement to pay a specific or even identifiable rate. Drawing all inferences in AToN's favor, CareFirst's payments in exchange for medical services make the existence of an implied contract at least plausible. (It is of course more likely that CareFirst's payment merely satisfied its obligations to its members.)  But AToN's claim for breach via underpayment hinges on CareFirst's failure to pay a rate promised on the VOB calls, and not one implied from the parties' conduct or the fair market value for AToN's services.  *See Mogavero*, 142 Md.App. at 276 (defining implied-contract recovery based on the amount intended or fair market value).  AToN's own demands for a

9

specific payment rate are not enough to support an inference that CareFirst agreed to those rates. If anything, CareFirst's payments at lower rates point in the opposite direction. And AToN still has not alleged a course of performance, course of dealing, or trade useage that implies agreement to a particular rate. At most, the parties' conduct can support the existence of a contract for medical services at an undefined price term. But AToN alleges nothing distinct from the oral promises during the VOB calls to suggest CareFirst's payments were unfair or unreasonable.

AToN's motion for leave to amend its implied contract claim, Count II in the proposed amended complaint, will be denied.

### C. Fraudulent Inducement Claim

Fraudulent inducement to contract is an exception to the rule that tort claims for contract breaches are barred by the economic loss doctrine under California law. *Food Safety Net Servs. v. Eco Safe Sys. USA, Inc.*, 209 Cal.App.4th 1118, 1130 (2012); *United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp.*, 660 F.Supp.2d 1163, 1180 (C.D.Cal. 2009) (quoting *Aas v. Super. Ct.*, 24 Cal.4th 627, 643 (2000), *superseded by statute on other grounds as stated in Rosen v. State Farm Gen. Ins. Co.*, 30 Cal.4th 1070, 1079–1080 (2003)). Such claims require allegations supporting "the existence of an intent at the time of the promise not to perform it." *Bldg. Permit Consultants, Inc. v. Mazur*, 122 Cal.App.4th 1400, 1414 (2004) (emphasis and quotation omitted). Alleging mere

failure to perform will not suffice. *See UMG Recordings, Inc. v. Global Eagle Ent., Inc.*, 117 F.Supp.3d 1092, 1110 (C.D.Cal. 2015) (citing *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18, 30 (1985)). Facts that can support an inference of fraudulent intent include a defendant's insolvency, "hasty repudiation" of a promise, "failure to even attempt performance," and "continued assurances" after non-performance became clear. *Tenzer*, 39 Cal.3d at 30 (citing Prosser, Torts § 109, at 764-65 (5th ed. 1984)).

Plaintiff failed to plead more than non-performance in its original complaint. The company "[did] not allege a single fact that would give rise to a plausible inference that CareFirst had no present intent to pay Aton's claims based on the UCR when it allegedly said it would." (ECF No. 18, at 27). The proposed amended complaint does no more. AToN still alleges baldly that CareFirst's representations during the VOB calls "were false[] [and] were known at the time by [the Defendants] to be false[.]" (ECF No. 20, at 16 ¶ 32). CareFirst's decision not to pay AToN's demanded rate is merely non-performance and does not, alone, support an inference of knowing misrepresentation during the VOB calls. AToN's new allegation that "Defendants receive a substantial benefit" from refusing to pay the represented rate also falls short. (*Id.*, ¶¶ 31-32). Parties to a contract almost always stand to benefit from an unremedied breach. That fact alone does not support an inference that a party never intended to

11

perform.  Plaintiff's motion for leave to amend its fraudulent inducement claim, Count IV in the proposed amended complaint, will be denied.

### D. Account Stated Claim

"[A]n account stated is an agreement between the parties who have had previous transactions of a monetary character that all the items of the account representing such transactions, and the balance struck, are correct, together with a promise, express or implied, for the payment of such a balance." *Kratos Def. & Rocket Support Servs., Inc. v. VOR Tech.*, No. 18-cv-3373-SAG, 2020 WL 1873932, at *6 (D.Md. Apr. 15, 2020) (quotation omitted).  Among other elements, it requires: (1) "a rendition of an account to the party sought to be charged reciting the amount of the present existing debt owed," and (2) "a promise, express or implied, to pay this balance."  *Id.*, (quoting *Wathen v. Pearce*, 175 Md.App. 651, 661 (1939)).

In its original complaint, Plaintiff did not allege that CareFirst acknowledged a duty to pay a specific existing debt.  It "never show[ed] assent to an amount owed for any particular patient by Defendants."  (ECF No. 18, at 36).  It still has not.  The proposed amended complaint alleges that Plaintiff "kept an account of the debits and credits involved" in the claims it submitted to CareFirst.  (ECF No. 20, at 16 ¶ 37).  Although AToN alleges that it demanded that CareFirst pay the alleged debt, it also alleges

12

that CareFirst "refused" to pay the amount requested. (*Id.*, at 17, ¶ 38). Plaintiff's motion for leave to amend its account stated claim, Count V in the proposed amended complaint, will be denied.

## IV. Conclusion

For the foregoing reasons, AToN's motion for leave to amend will be granted in part and denied in part. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge